JOHN M. THOMPSON v. GEORGE E. THOMPSON COMPANY, INC. AND ANOTHER.[1]

December 24, 1936.

No. 31,034.

*Ernest F. Jacobson,* for relator.
*Reynolds & McLeod,* for respondents.

[1]Reported in 270 N. W. 594.

HILTON, JUSTICE.

*Certiorari* to review an order of the industrial commission reversing an award of a referee allowing relator compensation for injuries claimed to have been received in the course of his duties while employed by the George E. Thompson Company, Inc.

The Thompson company is a corporation engaged in the sale and installation of lightning rods, roofing, and smokestacks. Its president was George E. Thompson; its secretary, his wife, E. D. Thompson; and its vice-president, John M. Thompson, relator here. The corporation maintained no separate office or warehouse, the family home being used for that purpose. The board of directors was made up of members of the Thompson family. George E. Thompson owned all the shares of stock with the exception of two, one of which was owned by his wife and the other by relator.

The day relator was injured he had just completed, at the Thompson home, loading a trailer with material and supplies to be used on an out-of-town contract job acquired by the corporation. At the same time one Wesley was putting storm windows on the family home, which, it will be remembered, was also the business office. Relator testified that he, after having finished loading the trailer, on instructions from his father, went to help Wesley. While attempting to put a storm door on the room used by relator as his own bedroom, relator was injured. The commission found that the injuries "did not arise out of and in the course of" the employment of relator by the corporation. That finding is assigned as error.

Relator was a young man of 22 years of age. He was unmarried and had always lived at home. Ever since the time when he was in high school he had worked in his father's business or that of the corporation. There appeared to be no specific agreement as to payment for his board and room, relator being allowed expense money when out of town on the corporation's business and being given board and room when at home. There was much conflict and dispute as to just how much relator received as salary from the corporation. The books of the company were not in good order. The entries were difficult to interpret, and the witnesses were not in accord with one another on the matter.

Relator alleges that this case is controlled by O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636. The Vittum company operated a commission house in South St. Paul through which it made sales of livestock for shippers. Vittum as an individual and not on behalf of the corporation owned and operated a farm a few miles from the stockyards. He bought cattle, hogs, and sheep from time to time and had the employes of the company, including O'Rourke, take them from the stockyards where they were purchased to the farm to be fed and fattened, after which the employes would bring them back to the stockyards to be sold. These tasks were done during the employe's hours of service for the Vittum company. No extra pay was allowed therefor. The manager of the farm, on occasions, also worked for the corporation, for which he was given no extra compensation.

Vittum had many cedar trees on his farm which he sold for transplanting. O'Rourke was sent out to the farm by Vittum to dig some of those trees and was injured while so doing. It was held that he was within the scope of his employment for the corporation. Vittum had authority to order O'Rourke to do the work, and it nowhere appeared that O'Rourke had any knowledge or had any reason to believe that the farm was not operated as a part of the business of the corporation. Here just the contrary is true. Relator knew that putting on storm doors and storm windows on his own bedroom had nothing to do with the work of installing lightning rods or other such equipment. An employe is not within the protection of the workmen's compensation act when as a voluntary accommodation to his employer he performs duties outside the scope of his employment. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636; Carnahan v. Mailometer Co. 201 Mich. 153, 167 N. W. 9. Regardless of whether relator performed the work of putting on the storm door for his father, as such, or under his instructions as George E. Thompson, president of the corporation, the result in this case is the same. If the former be true, then obviously he was not working for the corporation at that time. If it was done under orders of George E. Thompson as president of the corporation, as relator claims, then he must have known it was not

part of the corporate business. He had no right to assume that it was. The work of putting on the storm door merely was a chore which any boy living at home with his parents is likely to be called upon to do. The burden was upon relator to show that the injuries arose out of and in the course of his employment. He failed entirely to prove that the storm-proofing of his own bedroom was in any way incidental to the corporation's business. It is clearly apparent that there was nothing to lead him to suspect that it was.

Because of the conclusion above reached, no consideration need be given the other matters on which there was testimony.

Affirmed.